# IN THE COURT OF APPEALS OF IOWA

No. 19-0282
Filed May 1, 2019

**IN THE INTEREST OF G.J.,**
**Minor Child,**

**V.L., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

A mother appeals the juvenile court order terminating her parental rights. She claims the State did not show by clear and convincing evidence her parental rights should be terminated, the Iowa Department of Human Services (DHS) failed to make reasonable efforts at reunification, and she should be granted additional time. We find reasonable efforts were made to reunify the family and the child could not be safely returned to the mother's care even with additional services and time. We affirm.

## I.     Background Facts & Proceedings

V.L. is the mother of G.J., born in 2017. The mother listed several putative fathers to the child throughout the proceedings. The mother's rights had been terminated to an older child in early 2016 following two years of services.

On October 15, 2017, the child was removed from the mother's care following a domestic dispute between the mother and her paramour. The mother is deaf and mute. While law enforcement were in the home investigating the domestic dispute, the mother picked up and abruptly moved the three-month-old infant back and forth in a jerky manner without supporting the child's head, and the child's head struck the mother's shoulder. The child was hospitalized for observation and the mother was charged with child endangerment.[1] When released from the hospital, the child was placed with the foster family that adopted the older sibling. The child was adjudicated in need of assistance (CINA) on December 1.

---

[1] The mother was found guilty of assault causing bodily injury in March 2018 and served twenty-eight days in jail.

In addition to services provided by DHS and Family Safety, Risk, and Permanency services (FSRP), the mother also worked with service providers from Deaf Iowans Against Abuse (DIAA) and Crisis Intervention Service. In July, the court ordered interpreters be present at all visitations and in-person interactions between the mother, DHS, and FSRP.

The mother preferred a Certified Deaf Interpreter (CDI) to American Sign Language (ASL) interpreters, stating she primarily spoke a pidgin version of sign language. The interpreters available to DHS for in-person visits were ASL interpreters; the only CDI interpreters meeting DHS standards were based in other states. The mother was able to communicate with the ASL interpreters. The court ordered the CDI interpreters be available in person at court hearings, and approved availability through a video chat during FSRP and DHS sessions with the mother.[2] Early in the case, visitation occurred whether or not an interpreter was available. Following the court's order, later visits where an interpreter was not available were rescheduled.

DHS, FSRP, and the mother's DIAA advocate all worked to get the mother into ASL classes to facilitate her communication abilities. When the mother moved back to Mason City in February, she no longer had transportation to in-person ASL classes she was signed up for in Charles City. In August, the DIAA advocate helped the mother enroll in an online ASL class. The mother did not participate in any of the classes, blaming her time in jail and then lack of an iPad as preventing

---

[2] The mother also makes use of an app that video conferences an interpreter for phone calls. Additionally, the record shows she does significant amounts of texting and writing to others through Facebook and other social media.

her attendance. The mother provided conflicting communication information to providers. At times, she would claim to be unable to communicate clearly via written communications and other times would stop providers from reading things to her and indicate she could read and understand things on her own.

From October 2017 until the beginning of February 2018, the mother lived in a homeless shelter. In February, she moved into a one-bedroom apartment, and was still there at the time of the termination hearing. The mother was not employed throughout the case, but she received social security disability income, housing assistance, and food assistance every month. The mother has a payee through the county who pays her bills and distributes money to her weekly for food and other purchases.

From the beginning of the CINA case, the court ordered the mother to actively participate in mental-health treatment. While she was in the shelter, the mother met weekly with a therapist, communicating via writing. Once she was out of the shelter, the mother's insurance did not cover the same therapist. DHS and FSRP brought the mother information on other locations. She eventually chose a new therapist, but did not obtain an evaluation until June. She saw a therapist in July, but beginning in August did not show up to appointments or reschedule them. By the time of the termination hearing, the mother had not been to therapy for six months, but she had been reporting to FSRP she was attending consistently. The mother obtained her medications from the same healthcare facility.

DHS arranged a psychological evaluation for the mother in early September. The appointment was made with a psychologist able to communicate through sign language and recommended by the Iowa School for the Deaf. After

initially agreeing to the evaluation, the mother changed her mind, alternately claiming it would violate her probation, it conflicted with when she was to serve jail time, the transportation company would not take her, her lawyer and DIAA advocate told her she did not need to go, and various other reasons. Ultimately, she claimed DHS should have provided her with a deaf psychologist with an understanding of deaf culture, but the mother made no suggestions to DHS for a psychologist she felt was sufficiently qualified.

FSRP reports throughout the case show the mother tends to rely on others to make her appointments, sign her up for services and aid, and to generally tell her how to take care of the child. While she seemed receptive to suggestions or corrections from FSRP workers, she struggled to retain and develop those skills between visits and as the child grew. The mother repeatedly showed a lack of attention that could easily lead the child to harm, including being primarily focused on her phone, forgetting to feed the child or put the child down for a nap, not noticing the child putting items in her mouth that should not be eaten or climbing on outdoor furniture, and the child generally wandering around the apartment without the mother paying attention. The mother cancelled and cut short several visits with the child and many parenting sessions with FSRP in the months leading up to termination because she was stressed, tired, or sick and did not feel up to caring for the child for the full visitation period.

At the termination hearing on January 7 and 8, 2019, the court heard testimony from the mother, the DHS social worker, a crisis intervention worker who assisted the mother, the mother's DIAA advocate, the FSRP provider, the mother's probation officer, and the mother's CINA attorney.

On February 1, 2019, the court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h) (2018).[3]  She appeals.

## II.  Standard of Review

We review termination-of-parental-rights cases de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  "There must be clear and convincing evidence of the grounds for termination of parental rights."  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence."  *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (citation omitted).  The paramount concern in termination proceedings is the best interest of the child.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).  "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them."  *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

## III.  Sufficiency of the Evidence

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *A.B.*, 815 N.W.2d at 774.  We find termination was proper under section 232.116(1)(h).

Under Iowa Code section 232.116(1)(h), the court may terminate a parent's rights when the child is three years of age or younger, has been adjudicated CINA, has been removed from the parent's physical custody for at least six of the last twelve months without a trial period at home longer than thirty days, and there is

---

[3]  The court also terminated the parental rights of the child's putative father.  The putative father did not contest the termination and does not appeal.

clear and convincing evidence the child could not be returned to the home at the present time. The mother does not contest the first three elements have been established.

The district court found clear and convincing evidence existed that the child could not be returned to the mother's care, finding the child would likely suffer harmful effects from the mother's failure to exercise a reasonable degree of care in supervising the child. We agree and find the mother has not shown a willingness to follow through with evaluations and therapy ordered by the court. Two FSRP service providers noted the mother did not understand the child's cues and required multiple reminders and supervision to ensure the child did not come to harm. The mother testified having DHS or FSRP ask her questions about her mental health, her medication, or discussing court requirements caused stress and made her health worse.

While individual incidents of lack of care and supervision may seem small, put in a cumulative context they show the child cannot safely return to the home. *See In re A.M.*, 843 N.W.2d 100, 111–12 (Iowa 2014). The mother has not progressed beyond supervised visits and was still asking basic care questions over a year after the child's removal. When the time came to take court-recommended action to facilitate the child's return, the mother did not follow through, always shifting the blame to others. We find clear and convincing evidence establishes the child cannot be returned to the mother's care at this time.

## IV. Reasonable Efforts

The mother claims the State did not make reasonable efforts to reunite her with the child. She raises the issue of reasonable accommodations under the

Americans with Disabilities Act (ADA), to support a need for additional assistance by DHS. We note the mother raised similar claims on appeal with the child subject to the 2016 termination. *See In re J.L.*, 868 N.W.2d 462, 467 (Iowa 2015); *In re J.L.*, No. 16-0601, 2016 WL 3554927, at *2–4 (Iowa Ct. App. June 29, 2016). Iowa Code section 232.102(9) requires DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." The purpose underlying the reasonable-efforts requirement is to help the parent to make the changes necessary for the child to return. As we noted in her prior appeal, "the reasonable-efforts requirement is not a strict substantive requirement for termination." *J.L.*, 2016 WL 3554927, at *3.

In this case, the juvenile court found DHS had made reasonable efforts toward reunification through providing: "FSRP services, paternity testing, mental health services, Certified American Sign Language and Certified Deaf Interpreters, Crisis Intervention Services, referrals for in-person ASL classes, transportation, and referral for psychological evaluation."

On appeal, the mother identifies four reasonable effort "accommodations" she claims to have been denied: picture books to help her comprehend the parenting curriculum, the provision of an alert system for when the child cries, an "appropriate" psychological evaluator, and providing adequate communications. She asked the court for more time for reunification with these requested accommodations. On the record before us, the mother has failed to show any of her requested accommodations are either reasonable or would make it safe for the child to return to her care.

First, DHS and FSRP provided reasonable efforts to teach the mother parenting skills. FSRP used demonstrations with dolls and the child to show the mother appropriate actions. FSRP would communicate role-playing scenarios with the mother and inquire what appropriate actions would be in those situations. FSRP provided the written materials given to parents to review and discuss. FSRP arranged for weekly sessions with the mother and two interpreters to discuss both the current status and to work on parenting skills. The mother cancelled multiple sessions because they caused her too much stress. The mother does not provide an explanation how the addition of picture books would have improved her understanding of parenting skills beyond the services already provided.

Next, the record shows more than once the mother was offered and refused an alert system for when the baby cried. The child's doctor had offered her a system before the CINA proceedings ever began, and the FSRP reports note the mother told them she did not want an alert system until the child was returned to her care. In her testimony, the mother stated she would get the alert system "once I have [G.J.]" At no point prior to the hearing did the mother exhibit interest in pursuing the alert system, either refusing it or telling DHS and FSRP she was getting a system elsewhere. To now claim DHS has denied providing the mother the system is misleading at best, and we find the mother's claim has no merit.

Third, we find DHS made reasonable efforts to find an appropriate psychological evaluator for the mother. DHS consulted with the Iowa School for the Deaf to identify an appropriate psychologist with experience working with the deaf and able to communicate through sign language. DHS also approved the mother's DIAA advocate attending the evaluation, but even with that the mother

refused to attend, claiming she needed a deaf evaluator who understood the deaf culture. Then, at the termination hearing, the mother testified she objected to the psychologist DHS arranged due to his use of ASL instead of the mother's pidgin signing and stated she would prefer to have a certified interpreter for her evaluation rather than the designated evaluator signing for himself. We find DHS made reasonable efforts to find an appropriate psychological evaluator.

Finally, as to communications, we find DHS made reasonable efforts. An ASL interpreter was provided at visitations, and a CDI was available via video conference for parenting and review sessions between FSRP, DHS, and the mother, and in-person for court hearings. Despite efforts by both DHS and her DIAA advocate, the mother chose to not pursue ASL classes or make any effort to improve her communication abilities. The mother exhibited varying levels of understanding of ASL and the ability to read and write in the English language throughout the proceedings, alternately claiming lack of understanding and full understanding.

We find DHS made reasonable efforts to facilitate the reunification of the mother and the child. DHS provided reasonable accommodations in compliance with the ADA to the extent possible given the mother's refusal to actively participate in ordered services. The mother has failed to show she requested a reasonable service that was not offered to her. DHS can offer the services, but the parent must make the effort if the services are to remedy deficiencies and help return the child to the home.

## V.    Additional Time

Finally, the mother requests additional time to work toward reunification. The legislature has established a statutory scheme governing CINA cases, including appropriate time frames. *See, e.g.*, *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Iowa Code section 232.116(1)(h) specifically limits the time period to six months for children under four years of age. The court may only grant additional time if it can "enumerate the specific factors, conditions, or expected behavioral changes" which will occur and eliminate the need for removal. Iowa Code § 232.104(2)(b).

G.J. has been out of the mother's care for fourteen months—the majority of this young child's life. In July, the court granted the mother additional time to work toward reunification following a change in FSRP providers and earlier failures to provide in-person interpreters. In the same order, the court ordered the mother to "actively participate in, and demonstrate progress with, all services ordered herein." These services included individual mental-health therapy and medication management. The mother did not comply with the mental-health requirement and actively avoided a mental-health psychological evaluation. We see no evidence in the record to support a finding the mother is willing and able to make the changes necessary for the child to return home within six months.

We find the State has proven a ground for termination of the mother's parental rights, DHS made reasonable efforts to facilitate reunification, and additional time is not warranted. Termination of the mother's parental rights is in the child's best interest, and we affirm the juvenile court.

**AFFIRMED.**